UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF WISCONSIN

NICHOLAS J. STEINKE,

      Plaintiff,

v.                Case No. 19-cv-1086-pp

SGT. HINTZ, *et al.*,

      Defendants.

**ORDER GRANTING PLAINTIFF'S MOTION FOR LEAVE TO PROCEED WITHOUT PREPAYING FILING FEE (DKT. NO. 4) AND SCREENING AND DISMISSING COMPLAINT**

Plaintiff Nicholas Steinke, who is representing himself, filed a complaint alleging that the defendants violated his civil rights while he was an inmate at Dodge Correctional Institution. This decision resolves the plaintiff's motion for leave to proceed without prepaying the filing fee, dkt. no. 4, and screens his complaint, dkt. no. 1.

**I. Motion for Leave to Proceed without Prepaying the Filing Fee (Dkt. No. 4)**

The Prison Litigation Reform Act (PLRA) applies to this case because the plaintiff was a prisoner when he filed his complaint. See 28 U.S.C. §1915(h). The PLRA authorizes the court to allow a prisoner plaintiff to proceed with his case without prepaying the civil case filing fee. 28 U.S.C. §1915(a)(2). When funds exist, the prisoner must pay an initial partial filing fee. 28 U.S.C. §1915(b)(1). He then must pay the balance of the $350 filing fee over time, through deductions from his prisoner account. Id.

1

On August 9, 2019, the court ordered the plaintiff to pay an initial partial filing fee of $9.04. Dkt. No. 11. The court received that fee on August 14, 2019. The court will grant the plaintiff's motion for leave to proceed without prepaying the filing fee and require him to pay the remainder of the filing fee over time in the manner explained at the end of this order.

**II.    Screening the Complaint**

   A.    Federal Screening Standard

Under the PLRA, the court must screen complaints brought by prisoners seeking relief from a governmental entity or officer or employee of a governmental entity. 28 U.S.C. §1915A(a). The court must dismiss a complaint if the prisoner raises claims that are legally "frivolous or malicious," that fail to state a claim upon which relief may be granted, or that seek monetary relief from a defendant who is immune from such relief. 28 U.S.C. §1915A(b). In determining whether the complaint states a claim, the court applies the same standard that it applies when considering whether to dismiss a case under Federal Rule of Civil Procedure 12(b)(6). See Cesal v. Moats, 851 F.3d 714, 720 (7th Cir. 2017) (citing Booker-El v. Superintendent, Ind. State Prison, 668 F.3d 896, 899 (7th Cir. 2012)).

To state a claim, a complaint must include "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). The complaint must contain enough facts, accepted as true, to "state a claim for relief that is plausible on its face." Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (quoting Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 570 (2007)). "A

claim has facial plausibility when the plaintiff pleads factual content that allows a court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Id. (citing Twombly, 550 U.S. at 556). The court construes liberally complaints filed by plaintiffs who are representing themselves and holds such complaints to a less stringent standard than pleadings drafted by lawyers. Cesal, 851 F.3d at 720 (citing Perez v. Fenoglio, 792 F.3d 768, 776 (7th Cir. 2015)).

B.  The Plaintiff's Allegations

The plaintiff alleges that on December 3, 2014, while in segregation at Dodge Correctional Institution, he had a seizure. Dkt. No. 1 at 1. He "felt concussed," bit his tongue and lip (which caused bleeding) and hurt his knee. Id. He says he pressed the emergency call button but received no response. Id. After over an hour, Correctional Officer Glowinski walked by the plaintiff's cell while performing rounds, and the plaintiff told her he'd had a seizure and showed her his injuries. Id. at 2. Glowinski allegedly told the plaintiff she would "document this & tell Sgt. Hintz." Id. Glowinski left the cell but returned later and told the plaintiff that she had informed Hintz. Id. The plaintiff also spoke with Hintz, who said he documented the incident and contacted the Health Services Unit ("HSU"), but the plaintiff alleges that HSU never saw him or treated him that day. Id. The plaintiff asserts that Glowinski and Hintz conspired to deny him treatment and that they also had previously conspired to deny him treatment after he had a seizure on November 7, 2014. Id.

The next day—December 4, 2014—the plaintiff informed the John Doe unit 18 first shift correctional officers of the events that had occurred the day before, but that nothing was done. Id. He says that he informed the John Doe unit 18 second shift correctional officers of what had happened the day before, but again, nothing was done. Id. The plaintiff then wrote a request slip to the Health Services Unit. Id. On December 5, 2014, HSU saw the plaintiff and documented his seizure. Id. The plaintiff alleges that Glowinski, Hintz and the John Doe COs discriminated against him under the Americans with Disabilities Act because all of them were aware of his disability and the injuries he suffered as a result but refused to accommodate it. Id. He argues that this refusal resulted in further injury and that he was not treated the same as others similarly situated. Id.

The plaintiff says that when he filed a complaint, all of the defendants conspired "by presenting facts that are fraudulent, disregarding a persons safety & medical condition, failing to provide a proper investigation, not interviewing [his] witnesses or allowing [him] to present evidence or be heard violating [his] due process rights in an attempt to cover up there wring doings making this a system virtually non-existent." Id. at 2-3.

The plaintiff alleges that Derosa said, "I am unable to discern what happened in this instance," yet did not investigate and dismissed the complaint without interviewing the plaintiff or witnesses. Id. at 3. The plaintiff says it is important to note that Derosa was a co-conspirator to a November 7, 2014 event in which he was left for months in a segregation cell with a cracked skull,

4

and to a December 18, 2014 incident when he was injured as a result of a seizure. Id.

The plaintiff alleges that although she was aware that she had been given a "false & fraudulent report," defendant Rose did not investigate, stating only that the plaintiff had not presented information warranting an appeal. Id. The plaintiff says that he told Rose that both Glowinski and Hintz were aware of the situation, yet no one was interviewed. Id. He also alleges that Rose stated his medical concerns were being addressed. Id. The plaintiff contends that Rose was a co-conspirator in the November 7, 2014 incident. Id. at 4.

The plaintiff says that O'Donnell did not investigate, and "continued to let this process happen also having been aware of the facts his co-conspirators had." Id. He asserts that O'Donnell is a co-conspirator in the November 7, 2014 incident for failing to investigate or ensure that the plaintiff was treated; in the December 18, 2014 incident for failing to investigate or ensure he was treated; and in a June 27, 2016 incident in which he was forced into a top bunk and had seizures from a fall. Id. at 3-4.

The plaintiff alleges that Dittman didn't investigate, didn't interview him or witnesses, and presented a false report. Id. at 3. He asserts that Dittman was a co-conspirator in the November 7, 2014, December 18, 2014 and June 27, 2016 incidents. Id. at 4.

The plaintiff says he is suing under the Eighth and Fourteenth Amendments for deliberate indifference, cruel and unusual punishment and

equal protection; under 42 U.S.C. §§1985, 1981 and 1986; and under the ADA. Id. at 5. He seeks $5,000,000 in damages. Id.

  C. Analysis

    1. *Claims under 42 U.S.C. §§1981, 1985, and 1986*

Section §1981 of Title 42 "prohibits racial discrimination in the making and enforcement of private contracts." Runyon v. McCrary, 427 U.S. 160, 168 (1976). The plaintiff does not allege that the defendants interfered with his right to make or enforce a contract on account of his race. The complaint fails to state a claim under §1981.

Under §1985(1)-(2), the plaintiff must identify a conspiracy to prevent an officer of the United States from discharging duties or to obstruct or intimidate a party, witness or juror in a court of the United States. Dallas v. Hill, No. 18-C-1657, 2019 WL 403713, at *3 (E.D. Wis. Jan. 31, 2019). The plaintiff is not a government official, he does not identify any other government official who was prevented from discharging his or her duties and he has not alleged that anyone obstructed or intimidated anyone in a court of law. The complaint fails to state a claim under §1985(1)-(2).

Under §1985(3), the plaintiff must allege "first, that the defendants conspired; second, that they did so for the purpose of depriving any person or class of persons the equal protection of the laws; and third, that the plaintiff was injured by an act done in furtherance of the conspiracy." Id. (citing Hartman v. Bd. of Trustees of Community College Dist. No. 508, 4 F.3d 465, 469 (7th Cir. 1993)). Under §1986, a defendant may be liable if he or she knew

6

that others planned to conspire to deny treatment to the plaintiff because of his disability but failed to prevent the conspiracy. See Preddie v. Bartholomew Consol. Sch. Corp., 799 F.3d 806, 820 (7th Cir. 2015). The plaintiff's claims under §§1985 and 1986 are intertwined with his allegations of underlying constitutional violations. See Ennin v. CNH Indus. Am., LLC, 878 F.3d 590, 597 (7th Cir. 2017) (citing Indianapolis Minority Contrs. Ass'n v. Wiley, 187 F.3d 743, 754 (7th Cir. 1999), and Grimes v. Smith, 776 F.2d 1359, 1363 n.4 (7th Cir. 1985)). The court will address the plaintiff's conspiracy claims in that context.

2. *Claims under 42 U.S.C. 1983*

The Eighth Amendment prohibits cruel and unusual punishment. To state a claim under the Eighth Amendment, the plaintiff must allege that he had an objectively serious medical condition and that the prison officials were deliberately indifferent to the condition. Farmer v. Brennan, 511 U.S. 825, 837 (1994)). A prison official shows deliberate indifference when he "realizes that a substantial risk of serious harm to a prisoner exists, but then disregards that risk." Id. Neither negligence nor medical malpractice amount to a constitutional violation. Id. at 835-36; Estelle v. Gamble, 429 U.S. 97, 106 (1976).

The plaintiff has not stated a claim under the Eighth Amendment against any of the defendants. The plaintiff alleges that he suffered a seizure on December 3, 2014 and received treatment two days later, on December 5. In certain, serious circumstances, a two-day delay in treatment could state a claim under the Eighth Amendment. See Smith v. Knox Cty. Jail, 666 F.3d

7

1037, 1040 (7th Cir. 2012) (citing cases). Whether the length of the delay is constitutionally intolerable "depends on the seriousness of the condition and the ease of providing treatment." McGowan v. Hulick, 612 F.3d 636, 640 (7th Cir. 2010).

The plaintiff alleges that he bit his lip and tongue and his knee hurt. These are not severe injuries requiring immediate treatment. See, *e.g.*, Elcock v. Whitecotton, 434 F. App'x 541, 543 (7th Cir. 2011) (concluding that inmate's complaints of inadequate treatment of scratches and bruises would not support a claim for deliberate indifference, citing Pinkston v. Madry, 440 F.3d 879, 891 (7th Cir. 2006), which affirmed the district court's conclusion that a split lip and swollen cheek were not objectively serious medical conditions); and Davis v. Jones, 936 F.2d 971, 972-73 (7th Cir. 1991) (concluding that a one-inch cut and scraped elbow were not serious wounds)). Nor does the plaintiff allege that the two-day delay exacerbated his condition. See Petties v. Carter, 836 F.3d 722, 727 (7th Cir. 2016). The plaintiff fails to state a claim under the Eighth Amendment. See McCormick v. City of Chi., 230 F.3d 319, 325 (7th Cir. 2000) (noting that a plaintiff may "plead himself out of court" by alleging facts establishing that a defendant is entitled to prevail on a motion to dismiss;) see also Jackson v. Marion County, 66 F.3d 151, 153 (7th Cir.1995) (explaining that "a plaintiff can plead himself out of court by alleging facts which show that he has no claim, even though he was not required to allege those facts.... Allegations in a complaint are binding admissions ... and

admissions can of course admit the admitter to the exit from the federal courthouse.")

The plaintiff refers to other incidents that took place on November 7, 2014, December 18, 2014 and June 27, 2016. The court addressed the facts and claims related to the November 7, 2014 incident in Case No. 17-cv-653. The court eddaddress the facts and claims related to the December 18, 2014 incident in Case No. 19-cv-1085. The court addressed the facts and claims related to the June 27, 2016 incident in Case No. 17-cv-656. The plaintiff cannot proceed with those facts and claims in this lawsuit.

The plaintiff states that the defendants knew about his seizures and injuries and failed to properly investigate his inmate grievances. Prisoners have no constitutional right to an investigation of their grievances, see George v. Smith, 507 F.3d 605, 609 (7th Cir. 2007), or to compel police or others to investigate a general concern, see Dickens v. Illinois, 753 F. App'x 390, 392 (7th Cir. 2018) (citing Town of Castle Rock v. Gonzales, 545 U.S. 748, 756 (2005)).

The plaintiff states that the defendants violated his right to "equal protection" and that they all "conspired" against him. See Dkt. No. 1 at 4, 5. "Disabled individuals, like any class, are protected by the Equal Protection Clause of the Fourteenth Amendment." Stevens v. Ill. Dept. of Transp., 210 F.3d 732, 737 (7th Cir. 2000). To state an equal protection claim, a plaintiff "must establish that a defendant acted with a discriminatory purpose and discriminated against [him] because of [his] membership in an identifiable

9

group." Wileman v. Sch. Dist. of Janesville, No. 17-cv-531-jdp, 2018 WL 1401261, at *3 (W.D. Wis. Mar. 19, 2018). The court will assume that having a seizure disorder placed the defendant in the protected class of disabled individuals. But the plaintiff has not alleged any facts which indicate that he was treated differently that other people who were similarly situated—in other words, he has alleged no facts to show that he was treated differently than other disabled people. His conclusory allegations that he was discriminated against are not enough to state a claim.

Similarly, "[v]ague and conclusory allegations of the existence of a conspiracy are not enough to sustain a plaintiff's [pleading] burden[.]" Evers v. Reak, 21 F. App'x 447, 450 (7th Cir. 2001). To state a conspiracy claim, the plaintiff must allege that (1) the defendants reached an agreement to deprive him of his constitutional rights, and (2) that they committed overt acts in furtherance that actually deprived him of those rights. Id. (citing Scherer v. Balkema, 840 F.2d 437, 441 (7th Cir. 1988)). "[A] complaint must contain factual allegations suggesting that the defendants reached a meeting of the minds." Id. The plaintiff must "allege the 'what, when, why, and how' of the defendants' supposed agreement to deprive him of his constitutional rights." Id. (quoting Brokaw v. Mercer Cty., 235 F.3d 1000, 1016 (7th Cir. 2000)).

The plaintiff repeatedly alleges that the defendants all were aware of his seizure disorder and injuries, and he uses the word "conspiracy" over and over. Because the plaintiff has alleged no underlying constitutional violation, he cannot state a claim that the defendants conspired to commit such a

10

constitutional violation. Saying over and over that the defendants knew that he had a seizure disorder, then using the word "conspiracy" repeatedly, does not establish the existence of a conspiracy.

### 3. *Claims under the Americans with Disabilities Act*

The plaintiff alleges that the defendants violated the ADA. "Public entities, such as correctional facilities, must 'take reasonable measures to remove architectural and other barriers'" that deny individuals access to public services. Clemons v. Dart, 168 F. Supp. 3d 1060, 1065–66 (N.D. Ill. 2016) (quoting Tennessee v. Lane, 541 U.S. 509, 531(2004)). To state a claim under the ADA, the plaintiff must allege that (1) he is a "qualified individual with a disability;" (2) that he was denied "the benefits of the services, programs, or activities of a public entity" or otherwise subjected to discrimination by such an entity, and (3) that the denial or discrimination was "by reason of his disability." Wagoner v. Lemmon, 778 F.3d 586, 592 (7th Cir. 2015) (quoting Love v. Westville Corr. Ctr., 103 F.3d 558, 560 (7th Cir.1996)).

A qualified individual must have a disability which the Act defines as a "physical or mental impairment that substantially limits one or more of the major life activities of such individual." 42 U.S.C. §12102(2)(A). A major life activity includes "caring for oneself, performing manual tasks, walking, seeing, hearing, speaking, breathing, learning, and working." Hamm v. Runyon, 51 F.3d 721, 724 (7th Cir.1995). A qualified individual must allege that he was "excluded from or denied access to" any prison service, program or activity. Doyle v. Fairman, No. 96 C 2572, 1997 WL 610332, at *5 (N.D. Ill. Sept. 29,

11

1997). "The ADA does not provide a remedy for inconvenience." Id. (citing Bryant v. Madigan, 84 F.3d 246, 248 (7th Cir.1996)).

The plaintiff's seizure disorder is a qualified disability under the ADA. Lewis v. Truitt, 960 F. Supp. 175, 178 (S.D. Ind. 1997) ("For example, persons who have epilepsy, and a variety of other disabilities, are frequently inappropriately arrested and jailed because police officers have not received proper training in the recognition of and aid of seizures."). But the plaintiff has not alleged that the Department of Corrections denied him the "benefits of the services, programs, or activities of a public entity" due to his seizure disorder. To the contrary, the plaintiff alleges that Dodge Correctional Institution had medical care available for him but that specific *individuals* refused to comply with their duty to provide such medical care. The Seventh Circuit has held that "employees of the Department of Corrections are not amenable to suit under the Rehabilitation Act or the ADA." Jaros v. Ill. Dep't of Corr., 684 F.3d 667, 670 (7th Cir. 2012). See also Boston v. Dart, No. 14 CV 8680, 2015 WL 4638044, at *2 (N.D. Ill. Aug. 4, 2015) (noting that the ADA allows only official capacity claims involving the entire public entity, not individual capacity claims against specific people). Because the plaintiff has made allegations only against individuals, and not against the DOC, and because he has not alleged that he was denied access to any services, programs or activities, the plaintiff has not stated a claim under the ADA.

The court will dismiss the complaint for failure to state a claim upon which relief can be granted.

### III. Conclusion

The court **GRANTS** the plaintiff's motion for leave to proceed without prepaying the filing fee. Dkt. No. 4. The plaintiff must pay the $340.96 balance of the filing fee over time as he is able.

The court **ORDERS** that this case is **DISMISSED** under 28 U.S.C. §§1915(e)(2)(B) and 1915A(b)(1) because the complaint fails to state a claim. The court will enter judgment accordingly.

The court will document that the plaintiff has incurred a "strike" under 28 U.S.C. §1915(g).

This order and the judgment to follow are final. A dissatisfied party may appeal this court's decision to the Court of Appeals for the Seventh Circuit by filing in this court a notice of appeal within thirty days of the entry of judgment. See Fed. R. of App. P. 3, 4. This court may extend this deadline if a party timely requests an extension and shows good cause or excusable neglect for not being able to meet the thirty-day deadline. See Fed. R. App. P. 4(a)(5)(A).

Under limited circumstances, a party may ask this court to alter or amend its judgment under Federal Rule of Civil Procedure 59(e) or ask for relief from judgment under Federal Rule of Civil Procedure 60(b). Any motion under Federal Rule of Civil Procedure 59(e) must be filed within twenty-eight days of the entry of judgment. The court cannot extend this deadline. See Fed. R. Civ P. 6(b)(2). Any motion under Federal Rule of Civil Procedure 60(b) must be filed within a reasonable time, generally no more than one year after the entry of the judgment. The court cannot extend this deadline. See Fed. R. Civ. P. 6(b)(2).

13

The court expects parties to closely review all applicable rules and determine, what, if any, further action is appropriate in a case.

Dated in Milwaukee, Wisconsin, this 8th day of July, 2020.

BY THE COURT:

_____
**HON. PAMELA PEPPER**
**Chief United States District Judge**